**John S. LOGAN et al., Respondents,**

v.

**Harold J. PANUSKA et al., Appellants.**

**Arthur Russell KRUEGER, Jr., et al., Appellants,**

v.

**Harold J. PANUSKA, Respondent.**

**Nos. 48767, 48983 and 48768.**

Supreme Court of Minnesota.

April 4, 1980.

Rehearing Denied June 16, 1980.

Katz, Lange & Davis and Stephen C. Davis, Minneapolis, for Panuska et al.

Nemerov & Robbins, Ford M. Robbins and John G. Ness, Minneapolis, for Krueger et al.

Foster, Waldeck, Lind & Humphrey and Peter E. Lind, Minneapolis, for Logan et al.

Heard before KELLY, SCOTT and WAHL, JJ., and considered and decided by the court en banc.

KELLY, Justice.

These cases both arise out of the same set of facts and raise the issue of whether or not equitable estoppel is a defense in an action for rescission of the sale of securities sold in violation of Minn.St.1971, c. 80, the Minnesota Blue Sky Law.[1] We conclude

---

1. Minn.St.1971, § 80.07, stated in pertinent part: "No securities, except those exempt un-

der section 80.05 and those sold in sales exempt under section 80.06, shall be offered for

that equitable estoppel is a defense and accordingly we reverse Logan v. Panuska and affirm Krueger v. Panuska.

Bradford's Inc. operated a restaurant and on-sale liquor facility known as Bradford's. The corporation was originally owned by Charles Howard and defendant Harold Panuska. The shares which evidenced their ownership were not registered in accordance with Minn.St.1971, §§ 80.08 or 80.09.

In 1969, a dispute arose, and Mr. Howard thereafter agreed to sell his shares. The defendant made arrangements for 13 other investors, including the plaintiffs in these actions, to purchase Howard's investment.[2] In neither case did the trial court find that defendant had misrepresented the financial condition of Bradford's to any investor, or failed to inform him thereof. In fact, the evidence mainly shows that the investors went in with eyes open. For instance, plaintiff Clerkin at trial affirmed an earlier deposition in which he had testified that he knew of Bradford's money problems, but that he thought good management could turn them around. The sales were arranged over eight months and an escrow account was used to hold the funds prior to their being paid out to Howard. Defendant made no profit on the sale of Howard's stock. Because a liquor license could not be held by some of the new investors,[3] defendant apparently held all the shares for the benefit of the investors. Investors received no shares of stock evidencing their ownership until the business had already failed.

After they had invested, many of the plaintiffs in both cases participated extensively in the management of the business. For example, John Logan,[4] who was spokesman for the group of investors that included plaintiffs Joyce, Clerkin, and Ryan, was first vice president of the corporation and was also a director. He was involved in the day-to-day control of kitchen operations, and had access to the restaurant's locked liquor vault. In addition, he was for a time specifically authorized to write checks on behalf of the corporation, and had input on certain personnel matters.

Plaintiffs Logan and John Lindlan[5] were members of an executive committee that was set up to meet weekly to solve immediate problems of the corporation and to con-

sale or sold within the state unless such securities have been registered pursuant to sections 80.08 or 80.09 * * *."

Minn.St.1971, c. 80, has since been repealed. The current Blue Sky Law is contained in Minn.St. c. 80A. The current registration statute states: "It is unlawful for any person to offer or sell any security in this state unless (a) it is registered under sections 80A.01 to 80A.31 or (b) the security or transaction is exempted under section 80A.15." Minn.St. 80A.08.

Minn.St. c. 80A specifically provides for civil liability as well. Minn.St. 80A.23 (subd. 1) states: "Any person who sells a security in violation of sections 80A.08 or 80A.18, or any condition imposed under section 80A.11, subdivision 4, or section 80A.12, subdivisions 5 and 6, is liable to the person purchasing the security from him, who may sue either in equity for rescission upon tender of the security or at law for damages if he no longer owns the security. In any action for rescission, the purchaser shall be entitled to recover the consideration paid for the security together with interest at the legal rate, costs, and reasonable attorney's fees, less the amount of any income received on the securities. In an action at law, damages shall be the consideration paid for the security together with interest at the legal rate to the date of disposition, costs, and reasonable attorney's fees, less the value of the security at the date of disposition."

2. The issue of who approached whom with regard to investment in the corporation was much disputed at trial. For instance, defendant asserted that plaintiffs Logan and Lindlan approached him and asked to invest. Logan and Lindlan assert the contrary. In Logan v. Panuska, the trial court in its memorandum resolved the issue in Logan's favor. In Krueger v. Panuska, the court made no factual determination one way or the other concerning Lindlan, but assuming a view of the evidence most favorable to his verdict, we can assume that plaintiff Lindlan approached defendant about investing.

3. The liquor license could only be owned by registered voters of Hennepin County. The members of Shamrock Enterprises were aliens at this time and could not vote.

4. Logan had known defendant since October 1967. He helped out sporadically at Bradford's from October 1968 until he invested in 1969.

5. Lindlan, like the defendant, is a dentist, and had known defendant since 1951. He was a regular patron of Bradford's before he invested.

sider the day-to-day business. Plaintiff Arthur Krueger[6] later became a member of this committee. At the committee meetings, the members, among other things, reviewed profit and loss statements and heard oral reports from the manager. The members also had input into some of the details of running the business. For example, Lindlan at one meeting seconded a motion to raise certain salaries, and, at another, moved that the corporation donate money for, and enter a float in, a St. Patrick's day parade.

In the fall of 1970, the restaurant was on the verge of being closed due to unpaid taxes. The investors were assessed according to their original investment to pay off the debts and voluntarily paid the sums, though others sold out. Notwithstanding the bad financial news, plaintiffs Krueger and Topel purchased additional shares as they became available in the fall of 1970. The actions to rescind the initial sale of stock and recover the purchase price was begun only after the failure of the business in 1973.[7]

Logan v. Panuska was heard in Hennepin County District Court. The trial court, sitting without a jury, found for the plaintiffs and awarded them purchase price and return of a corporation assessment. The court did not consider equitable estoppel to be a defense in Minnesota. Defendant Panuska appeals. Krueger v. Panuska was also heard in Hennepin County District Court. At the close of the presentation of plaintiff's case, the trial court held that plaintiffs had failed to make a prima facie case because their conduct in participating in the management of the business and in acquiring additional stock estopped them from rescinding the sale of stock. As a result, the trial court issued a directed ver-

dict pursuant to Rule 50.01, Rules of Civil Procedure, and dismissed the jury. Plaintiffs appeal.

■ The basic policy of state blue sky laws is to prevent fraud in the sale of securities. To force compliance with the registration provisions, purchasers of unregistered securities are often given the right of rescission. Thus, a plaintiff must plead and prove that he purchased the securities from the defendant and that the securities were not registered in accordance with the blue sky laws. Many cases from other jurisdictions have disallowed recovery on the basis of estoppel, however. This represents an attempt by the courts to ease the sometimes harsh effects of the blue sky laws in situations where no actual fraud is present.

Generally, courts dealing with blue sky laws which state that sales of securities in violation of registration requirements are "voidable," rather than "void," have recognized equitable estoppel as a defense, because only a voidable contract can be ratified or confirmed.

■ *Vercellini v. U. S. I. Realty Co.*, 158 Minn. 72, 196 N.W. 672 (1924), is generally cited as holding that sales of securities in violation of the Minnesota Blue Sky Law are void rather than voidable. See, C.C.H., Blue Sky Reporter, § 3661. Thus, by the general rule, estoppel should not be a defense to a suit to recover the purchase price in Minnesota. An examination of *Vercellini*, however, shows that this is an expansive reading of the case. *Vercellini* did not involve allegations of estoppel[8] and though we stated therein that "[n]o transaction in violation of law can be made the foundation of a valid contract," we discussed the issue further:

---

6. Krueger, an insurance agent, had known defendant since the late 1950's. He had written life insurance on defendant and casualty and fire insurance on Bradford's before he invested.

7. The current Minnesota Blue Sky Law requires that an action for rescission or damages be brought within 3 years, Minn.St. § 80A.23, subd. 7, and would thus preclude these cases.

8. Our most recent blue sky case, *McCauley v. Michael*, 256 N.W.2d 491 (Minn.1977), also did not preclude an equitable estoppel defense in blue sky cases. *McCauley* considered only an in pari delicto defense, which is based upon prior knowledge of and acquiescence in the sale of unregistered stock. Estoppel is based upon actions inconsistent with the position advanced at trial; that is, the desire to rescind the sale.

" * * * Illegal contracts are commonly spoken of as void, but an eminent authority has said that the statement is not generally accurate and, if true under all circumstances, it would lead to unfortunate consequences, for it might protect a guilty defendant from paying damages to an innocent plaintiff. 3 Williston, Contracts, § 1630." 158 Minn. 74, 196 N.W. 672.

Though the void-voidable distinction is still relied upon, the rule is riddled with exceptions:

"Some of the early blue sky cases turned largely upon whether sales in violation of the statute were 'void' or merely 'voidable.' Although this difficulty was sometimes due to faulty drafting, the courts occasionally used 'void' language even when the statutes themselves used neither term. [Citing, inter alia, Drees v. Minnesota Petroleum Co., 189 Minn. 608, 250 N.W. 563 (1933).] The distinction cannot be entirely ignored. It becomes important, according to the Restatement of Contracts, 'where property is transferred and subsequently passes to a bona fide purchaser for value. If the original transfer is voidable the innocent purchaser acquires an indefeasible title. A similar consequence follows the negotiation of a negotiable instrument that is voidable. Furthermore, a contract which is voidable may be ratified while a void transaction cannot be.'

"Nevertheless, the void-voidable dichotomy has no great practical significance in the blue sky field today, if it ever did. Even the early blue sky cases which were decided under 'void' terminology held, virtually without exception, that the holder in due course of a note drawn for stock issued in violation could recover on the note despite the defect of illegality. And there surely can be little difference as between the immediate parties to the illegal sale. Whether the legislature or the court prefers 'void' or 'voidable' language, the buyer can usually escape liability. And, conversely, even a court which is committed to the seemingly more categorical term will find a way to deny judgment to a buyer who it thinks does not deserve to win. As the Massachusetts court (which was such a jurisdiction) put it with admirable frankness, 'technical niceties of distinction between void and voidable contracts' may be forgotten when it is clear that the buyer simply 'was not imposed upon.' " Loss & Cowett, Blue Sky Law (1958), p. 131. (Footnotes omitted).

Loss and Cowett state, in a footnote, that "[a] line of cases under the Minnesota statute indicates that no great significance is attached to the labels." Loss & Cowett, Blue Sky Laws (1958), p. 133, n. 9. Certainly, the legislature never intended to make all sales contrary to the statute void. If so, purchasers would be precluded from enforcing a sale where it was a profitable venture free from fraud.

█ We do not believe the void-voidable rule should prevent a court from acting fairly by applying equitable principles, nor do we believe the Blue Sky Law was meant to be used to protect the investor from all of his errors of business judgment no matter how unrelated to, or distant from, the sale of unregistered securities. The court has recently applied equitable principles to our Blue Sky Law in the case of *McCauley v. Michael*, 256 N.W.2d 491 (Minn.1977). We there held that a purchaser in pari delicto with the seller may not enforce a contract violating the Blue Sky Law.

█ Krueger v. Panuska presents an excellent example of plaintiffs attempting to use the Blue Sky Law to correct their errors in business judgment. Some of the plaintiffs bought into the restaurant only after being patrons of the establishment for a period of time and seeing its volume of business. The plaintiffs were not induced to buy the stock through any misrepresentation of the defendant as to the financial condition of the restaurant. One plaintiff testified that he was informed of the investment opportunity by another plaintiff, Arthur Krueger, his brother-in-law, who encouraged him to contact the defendant. The plaintiffs actively participated in the

management and control of the corporation during the course of their investment. Several were members of an executive committee, which was responsible for day-to-day operation of the restaurant, and received and read financial statements dealing with the business. All voluntarily paid an additional assessment that was necessary to keep the restaurant open. Some of the plaintiffs even acquired additional stock from other shareholders after their initial purchases. Finally, none took any steps to rescind their stock purchases until after the business had failed. In a situation such as this, it would be inequitable to allow the plaintiffs to foist their losses upon the defendant. Accordingly, we hold that equitable estoppel is a valid defense in an action for rescission under Minn.St.1971, c. 80.

In Krueger v. Panuska, the evidence of estoppel is overwhelming and the facts upon which it is based are not disputed. Thus, viewing the evidence most favorably to the plaintiffs and the inferences to be drawn from it, a verdict against the defendant could not reasonably be sustained. Therefore, we affirm Krueger v. Panuska. We reverse Logan v. Panuska and return it to the trial court for further action in accordance with this opinion.

Because of our disposition of these cases, we need not consider other issues raised by the parties.

Krueger v. Panuska affirmed; Logan v. Panuska reversed.

TODD, J., took no part in the consideration or decision of this case.

SCOTT, Justice (dissenting).

I respectfully dissent. The adoption of an equitable estoppel defense in the context of the instant cases severely undermines the legislation regulating the sale of securities.

The purpose of our Blue Sky Law is to prevent sale to the public of various types of securities until authorities with particular expertise are able to review the proposed offering and determine whether it presents a fair opportunity of investment. Such a system protects the public against money-making schemes which are downright unscrupulous as well as plans of investment which, although not fraudulent, may be unsound. See, e. g., *State v. Hofacre*, 206 Minn. 167, 288 N.W. 13 (1939); *State v. Gopher Tire and Rubber Co.*, 146 Minn. 52, 177 N.W. 937 (1920); Perlman, A Critical Analysis of the Registration Provisions of the Minnesota Securities Act, 56 Minn.L.Rev. 523 (1972). To effectuate this policy, the legislature has provided for penalties against those who violate the Blue Sky Law. In addition to being subject to criminal sanctions, see, Minn.St. 80A.22, a seller who fails to comply with the securities legislation is liable to an innocent purchaser for recission or damages. Minn.St. 80A.23, subd. 1; *McCauley v. Michael* 256 N.W.2d 491 (Minn.1977).

The majority, by fashioning an exception to this statutory liability in the form of an estoppel defense, subverts the legislature's purpose in this entire field. The very person sought to be protected, the investor, is denied recovery while the individual violating the law escapes liability. This result neither serves to compensate the innocent purchaser nor does it deter future violations of the Blue Sky Law. In fact, the majority decision could prompt clever promoters of questionable investments to ignore the Blue Sky regulations and, instead, encourage an investor to participate in the management of the company so that an estoppel defense could later be established. Clearly, use of estoppel as a defense in the instant actions is inconsistent with the express terms of the statute, as well as the policy underlying our Blue Sky Law. This law should be strictly enforced, and legal exceptions kept to a bare minimum.

A similar conclusion was reached in *Covert v. Cross*, 331 S.W.2d 576 (Mo.1960). In that case, an action was brought under the Missouri Blue Sky Law. The trial court refused to instruct the jury on the basis of estoppel and the Missouri Supreme Court affirmed by reasoning as follows:

"We think it is clear that the theory of estoppel sought to be presented by defendants-appellants would tend to nullify

and defeat the very purpose of the statute, which is clearly penal in nature. It is immaterial whether or not there was evidence to support [an estoppel instruction]. The Act was passed to protect investors against their own weaknesses and to prevent the happening of such losses as are shown by this record. If plaintiffs' evidence brings their case within the provisions of the statute, they are entitled to recover. The acts relied upon constitute no defense to this action." 331 S.W.2d 585 (citations omitted). See, also, *Schvaneveldt v. Noy-Burn Milling & Processing Corp.*, 10 Utah 2d 1, 347 P.2d 553 (1959); *Brown v. Cole*, 155 Tex. 624, 291 S.W.2d 704, 59 A.L.R.2d 1011 (1956).

The majority indicates that an estoppel defense should be adopted "to ease the sometimes harsh effects of the blue sky laws in situations where no actual fraud is present." This argument should not prevail. As mentioned previously, Minnesota's Blue Sky Law is not only intended to protect the public against fraudulent money-making schemes, but also to shield an investor against unsound plans of investment. See, e. g., *State v. Gopher Tire and Rubber Co., supra*. Indeed, for a purchaser to recover under § 80A.23, subd. 1, he need not show a fraudulent intent on the part of the seller. Thus, the absence of a showing of fraud is not a proper consideration for giving relief to one who violates the Blue Sky Law.

Based on the foregoing, I believe that estoppel should not be recognized as a defense to an action brought under our securities legislation. Even assuming, arguendo, that such a defense were proper as a matter of law, it is difficult to see how the facts of the instant cases support invocation of the doctrine. Panuska can by no means be considered as having "clean hands." He was actively involved in the solicitation and sale of the stock to the investors in question. At the time, the company was experiencing financial difficulties of which he was undoubtedly aware. The record discloses that at least some of the investors were not informed of these financial problems prior to the time they invested. Panuska retained complete control over the operation of the restaurant and any input from the other partners was, according to Panuska, merely "advisory." The evidence also indicates that any participation by the investors in the management of the restaurant was undertaken out of a desire to safeguard their investments. Consequently, on balance the equities weigh in favor of the investors and thus, as a factual matter, no basis seems to exist for an estoppel defense in these cases.

For the above reasons, and since there is no merit to the other issues raised by Panuska, I would affirm Logan v. Panuska and reverse Krueger v. Panuska.

SHERAN, Chief Justice (dissenting).

I agree with the view that equitable estoppel should not be applied.

WAHL, Justice (dissenting).

I join the dissent of Mr. Justice Scott.