**Stephen ADAMS**

v.

**RESOLUTION TRUST CORPORATION, as Receiver for Midwest Federal Savings and Loan, et al.**

**Civ. No. 4–89–330.**

United States District Court, D. Minnesota, Fourth Division.

Feb. 9, 1990.

As Amended March 2, 1990.

Timothy D. Kelly and Diane M. Helland, Kelly & Berens, Minneapolis, Minn., for plaintiff Stephen Adams.

John Paul Martin, John E. Yanish and Jeffrey G. Stephensen, Peterson, Tews & Squires, Minneapolis, Minn., for defendant Resolution Trust Corp.

## ORDER

ROSENBAUM, District Judge.

Defendant FSLIC (the Federal Savings and Loan Insurance Corporation), now the RTC (Resolution Trust Corporation),[1] in its role as receiver for Midwest Federal Savings and Loan Association (Midwest Federal), seeks judgment on the pleadings, pursuant to Rule 12, Federal Rules of Civil Procedure (Fed.R.Civ.P.).[2] Based upon the files, records, proceedings, and oral arguments herein, and for the reasons set forth below, defendant's motion, considered as if for summary judgment, is granted.

*Facts*

Plaintiff is a Florida businessman who purchased $2.5 million in subordinated debentures issued by Midwest Federal on March 31, 1988. Defendant FSLIC was a congressionally created agency of the United States charged with protecting the financial integrity of the savings and loan industry. The RTC, FSLIC's statutory successor, is currently the receiver for Midwest Federal, a failed financial institution.

On February 13, 1989, some ten months after plaintiff's purchase of the subordinated debentures, the Federal Home Loan Bank Board (FHLBB) determined that Midwest Federal was insolvent and appointed the FSLIC as conservator of Midwest Federal. FHLBB Resolution 89–179, at 2.

On March 21, 1989, plaintiff brought this action against Midwest Federal and several former officers of Midwest Federal.[3] Plaintiff seeks to rescind the subordination agreement claiming he was fraudulently induced to make the $2.5 million loan. Plaintiff also seeks to set off the entire unpaid balance of the subordinated debentures against a $7,845,000 promissory note, dated June 30, 1988, which plaintiff owes to Midwest Federal.

---

1. On August 9, 1989, the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA) became law. Pub.L.No. 101–73, 103 Stat. 183. Section 401(f)(2) abolishes the FSLIC and substitutes the Resolution Trust Corporation (RTC) as its successor. *Id.* at 356. A stipulation and order to substitute RTC, as receiver, for FSLIC, as receiver, was signed by the parties and the magistrate and was filed November 7, 1989. For purposes of this motion the Court will continue to refer to the defendant as the FSLIC.

2. While the FSLIC has styled its pleading as a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., the Court has considered affidavits and documents outside the pleadings. Thus, this motion is treated as one for summary judgment. Rule 12(b) and (c) and Rule 56, Fed.R.Civ.P.

3. The action was originally filed in Hennepin County as a Minnesota state court proceeding against Midwest Federal and others as defendants. It was subsequently removed to this Court on the petition of the FSLIC, as conservator. The parties stipulated on July 6, 1989, to the substitution of the FSLIC, as receiver, as party defendant for Midwest Federal.

On May 4, 1989, having determined Midwest Federal's assets to be less than its obligations, the FHLBB replaced the FSLIC as conservator with the FSLIC as receiver. FHLBB Resolution 89–1388 at 1–2. On the same date, the FHLBB created a new savings and loan association, Midwest Savings Association. The FHLBB then directed the FSLIC as receiver to transfer substantially all of Midwest Federal's assets, and certain of its liabilities, to Midwest Savings via a purchase and assumption transaction. FHLBB Resolution 89–1389 at 2–5.

The result of these proceedings is that the FSLIC (now RTC), as receiver, holds Midwest Federal's obligation on the subordinated debentures and Midwest Savings, with FSLIC (now RTC) as its conservator, holds plaintiff's obligation on the promissory note.

At the time this case was removed, jurisdiction was conferred upon this Court by 12 U.S.C. § 1730(k)(1).[4]

*Plaintiff's Contentions*

Plaintiff's 1988 debenture purchase was memorialized in a written agreement. A review of that document shows it to be replete with language making clear the subordinate nature of the debt. The document is entitled "SUBORDINATED DEBT SECURITIES AGREEMENT." Amended Complaint, Ex. C, title page. The introductory paragraph of the agreement states "the Lender agrees to purchase, subordinated debt securities." *Id.* at 1. Paragraph 1 of the agreement sets forth Midwest Federal's authority to issue subordinated debt securities. *Id.* Paragraph 3 states the notes are not secured by the assets of Midwest Federal and cannot be held by an FSLIC-insured institution. *Id.* at 3. Paragraph 11 states:

> Payment of the principal of and interest on the Notes is hereby expressly subordinated on liquidation to all claims (includ-

ing post default interest) against [Midwest Federal] having the same priority as savings account holders or any higher priority. Further, for any and all purposes whatsoever, the Notes shall be subordinate to the 8–¼% $8 million subordinated debentures of [Midwest Federal] due in 1993.

*Id.* at 14. Paragraph 20 also contains an explicit subordination in the event of the failure of Midwest Federal:

> If the FSLIC shall be appointed receiver for [Midwest Federal] and ... shall arrange for the assumption of less than all of the liabilities of [Midwest Federal] by one or more other insured institutions, the FSLIC shall have no obligation ... to contract for or otherwise arrange for the assumption of the obligation represented by the Note in whole or in part....

*Id.* at 20.

It is plaintiff's contention that he did not know his investment in these debentures would be used to enable Midwest Federal to meet its regulatory capital requirements. In the absence of contrary evidence, at this point in the proceedings, the Court assumes this to be true. But whatever the state of plaintiff's knowledge, Midwest Federal did include the $2.5 million in its regulatory capital. Affidavit of Steven L. Opsal, ¶¶ 7–9; Affidavit of Lynne Blixt, ¶¶ 4–6. In January, 1989, the FSLIC directed that Midwest Federal cease the inclusion of the subordinated debentures in its regulatory capital base. Opsal Affidavit at ¶ 10. The directive was issued because it appeared the subordinated debentures had been purchased with funds loaned by Midwest Federal.[5]

Plaintiff, by this action, first seeks to rescind the subordinated debenture agreement and, then, seeks to set off the amount he claims is due against his promissory note, now held by Midwest Savings. Plaintiff argues he is entitled to rescission be-

---

4. Section 407 of FIRREA repeals 12 U.S.C. § 1730(k)(1). Pub.L. No. 101–73, § 407, 103 Stat. 183, 363 (1989). Section 209 of FIRREA amends 12 U.S.C. § 1819, which is now the relevant jurisdictional provision. *Id.* at 216. This Court presently has jurisdiction, pursuant to 12 U.S.C. § 1819, as amended.

5. This arrangement was acknowledged by counsel for plaintiff at oral argument. Tr. of motion proceedings, at 19–20 (Aug. 24, 1989). Plaintiff borrowed from Midwest Federal to secure the funds he used to purchase these debentures.

cause Midwest Federal made material misrepresentations which induced him to enter into the subordinated debt securities agreement. It is his position that upon rescission he would be entitled to rank in parity with general creditors. He then argues that this elevation in status creates a mutuality of obligation which permits the debentures to be set off against his promissory note. Plaintiff contends the right to set-off was effective upon Midwest Federal's insolvency, so that Midwest Savings took the promissory note subject to the set-off.

*Analysis*

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Prior to the Federal Rules of Civil Procedure and notice pleading, motions to dismiss a complaint or strike a defense were the primary tools to prevent factually insufficient claims from proceeding to trial. *Id.* Under notice pleading, summary judgment assumes this integral function. *Id.*

Summary judgment may be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. *Id.* at 322–23, 106 S.Ct. at 2552. The party opposing summary judgment must produce concrete facts demonstrating there is a genuine issue of fact for trial. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir.1984).

Plaintiff asserts he is entitled to set off these debentures against his loan from Midwest Federal. The right to set-off exists only as to mutual debts. *Soo Line R.*

*Co. v. Escanaba & Lake Superior R. Co.*, 840 F.2d 546, 551 (7th Cir.1988); *Olsen–Frankman Livestock Mktg. Serv., Inc. v. Citizens Nat'l Bank*, 605 F.2d 1082, 1087 (8th Cir.1979). Here, plaintiff purchased debentures which, by their terms, were expressly subordinated to all claims having the same or higher priority as savings account holders.

In *Northwest Racket Swim & Health Clubs, Inc. v. Federal Sav. & Loan, Ins. Corp.*, 721 F.Supp. 211 (D.Minn.1989), Judge MacLaughlin, of this court, considered claims virtually identical to these. His analysis in *Northwest Racket* is fully applicable here.

The words of the subordinated debt agreement are precisely to the contrary of plaintiff's position. The agreement, by its terms, provides for the purchase of subordinated debt. To overcome this contractual bar, plaintiff attempts to establish mutuality based upon the rule set forth in *Oppenheimer v. Harriman Nat'l Bank & Trust Co.*, 301 U.S. 206, 57 S.Ct. 719, 81 L.Ed. 1042 (1937). Claiming Midwest Federal's fraud and misrepresentation, he asserts himself to be a defrauded purchaser. Citing *Oppenheimer*, plaintiff concludes a defrauded purchaser is entitled to rank on a parity with general creditors. It is, then, to *Oppenheimer*, its progenitors, and its progeny which the Court must turn.

It is noted, first, that *Oppenheimer* did not involve subordinated debt. In *Oppenheimer* the Supreme Court held that defrauded purchasers of a bank's capital stock could rescind their purchase and rank with the bank's unsecured creditors. 301 U.S. at 214–15, 57 S.Ct. at 724. The Court, however, found rescission to be contingent upon payment of a statutorily defined liability to the bank's creditors.[6] "By payment of the comptroller's assessment they fully discharged their liability as stockholders. And as claimants they stand on the same footing as other creditors." 301 U.S. at 215, 57 S.Ct. at 724. *See also In re Weis*

6. Prior to 1959, shareholders of a national bank were statutorily liable for all obligations of the bank to the extent of the par value of their shares. 12 U.S.C. § 64 [repealed]; *In re Weis*

*Securities, Inc.*, 605 F.2d at 590, 595 (2d Cir. 1978), *cert. denied*, 439 U.S. 1128, 99 S.Ct. 1045, 59 L.Ed.2d 89 (1979).

*Securities, Inc.*, 605 F.2d 590, 596 n. 12 (2d Cir.1978), *cert. denied,* 439 U.S. 1128, 99 S.Ct. 1045, 59 L.Ed.2d 89 (1979).

This issue was then considered by the Second Circuit in *Weis Securities,* which did involve subordinated debt. The Second Circuit refused to allow defrauded lenders to rescind their subordination agreements. That court held that when a lender subordinates a loan to enable a securities broker to comply with regulatory capital requirements, the lender will be estopped from rescinding the subordination agreement. 605 F.2d at 596. *Weis Securities* is consistent with *Oppenheimer* and reflects the fact that the subordination agreements allowed the broker-dealer to comply with regulatory capital requirements. *Id.*

In *Weis Securities,* the Court found that whether customers and creditors of the broker-dealer relied on the subordination agreements was irrelevant. *Id.* This finding was premised on *Scott v. Deweese,* 181 U.S. 202, 21 S.Ct. 585, 45 L.Ed. 822 (1901). In *Scott,* the plaintiff sought to rescind his purchase of bank stock, claiming the purchase was fraudulently induced. The Court denied rescission, finding a purchaser of bank shares must be conclusively presumed to have known he had increased the bank's capital and facilitated the conduct of its business. *Id.* at 212, 21 S.Ct. at 588.

It is true that in *Federal Deposit Ins. Corp. v. United States Nat'l Bank,* 685 F.2d 270 (9th Cir.1982), the Ninth Circuit allowed a defrauded purchaser to rescind its subordinated note agreement and thereby rank with the bank's other creditors. But, in that case, the court found the loan could not be used for regulatory capital under the National Banking Act. *Id.* at 274–75. Thus, since the subordinated loan in *United States Nat'l Bank* was not used to enable the bank to comply with regulatory capital requirements, the Ninth Circuit found *Weis Securities* was not analogous and the *Oppenheimer* rule was applicable. *Id.*

█ Plaintiff argues that, in the absence of his actual knowledge that his loan to Midwest Federal would be used to meet Midwest Federal's regulatory capital requirements, he fits within the *Oppenheimer* rule and *Weis Securities* does not apply. But, like the plaintiff in *Weis Securities,* the present plaintiff purchased subordinated debt which allowed Midwest Federal to meet regulatory capital requirements. Opsal Affidavit, ¶¶ 7–9; Blixt Affidavit, ¶¶ 4–6. Plaintiff's contention, that subjective knowledge is the critical concern, misreads the law.

Close analysis reveals that vindication of regulatory interests is the predicate to rescission. In *Oppenheimer,* the plaintiff's right to parity with other unsecured creditors accrued only upon his payment of a statutory liability to those creditors. The bank's fraud did not discharge that liability. 301 U.S. at 214–15, 57 S.Ct. at 724. In *Weis Securities,* the court's holding was based on the purposes underlying regulatory capital requirements. *Weis Securities,* 605 F.2d at 596. In *United States Nat'l Bank,* the plaintiff's right to parity with unsecured creditors existed only because the subordinated loans did not, in fact, enable the bank to meet regulatory requirements. 685 F.2d at 274–75. In other words, the regulatory interests in *Oppenheimer* and *Weis Securities* were satisfied and there was no regulatory interest implicated in *United States Nat'l Bank.*

The regulatory capital requirements clearly are designed to bolster public confidence in the stability and integrity of financial institutions, thereby encouraging orderly financial transactions and supporting the national economy. *See Weis Securities,* 605 F.2d at 596. "To assure creditors that they could rely on the stated capital resources of a bank, the legislature compelled those who had contributed capital to stand by their commitments." *Id.* When a subordinated loan is used to enable a financial institution to comply with capital regulations, the subordinated lender properly is estopped from rescinding its agreement. *See Weis Securities,* 605 F.2d at 596.

In this case, plaintiff expressly purchased subordinated debentures. Amended Complaint Ex. C, title page, introductory paragraph, ¶¶ 1, 3, 11, 20. Midwest Feder-

al reported these subordinated debentures as part of its regulatory capital. Opsal Affidavit, ¶¶ 7–9; Blixt Affidavit, ¶¶ 4–6. Plaintiff's own documents repeatedly refer to regulatory capital, federal regulations governing subordinated debt and regulatory capital, and Midwest Federal's treatment of other subordinated debt as part of regulatory capital.

The Court finds that, as in *Scott v. Deweese*, plaintiff must be presumed to know that his loan increased Midwest Federal's capital and facilitated the conduct of its business.[7] *See Scott*, 181 U.S. 202, 212, 21 S.Ct. 585, 588, 45 L.Ed. 822 (1901). Accordingly, plaintiff's present claim of lack of subjective knowledge that Midwest Federal would report the subordinated debentures as regulatory capital is irrelevant.

Plaintiff is a sophisticated businessman.[8] In this transaction, he purchased subordinated debt—and that is precisely what he received. That debt was made part of Midwest Federal's regulatory capital. As a result, plaintiff is estopped from rescinding the purchase of the debentures and escaping his subordinated status.

■ As a second line of attack, plaintiff seeks rescission of the transaction under the Minnesota Blue Sky law, Minnesota Statutes, §§ 80A.01 and 80A.23. Equitable principles apply in a purchaser's action for rescission under § 80A.23. Minnesota Statutes, § 80A.23(1); *Logan v. Panuska*, 293 N.W.2d 359, 363 (Minn.1980); *McCauley v. Michael*, 256 N.W.2d 491, 500 (Minn. 1977).

Rescission under § 80A.23 serves a dual function: it protects innocent purchasers and compels sellers to comply with securities regulations by depriving them of ill-gotten gains.[9] Note, *The Minnesota Supreme Court: 1980*, 65 Minn.L.Rev. 1063, 1069 (1981). Here, neither policy of

§ 80A.23 will be furthered by allowing rescission.

This transaction, even at this early stage of the proceeding, cannot be regarded as one conducted in the regular course of business dealings. As acknowledged at oral argument, plaintiff took a loan from Midwest Federal and immediately loaned the selfsame funds back to the institution from which he had just secured the loan. Tr. of motion proceedings, at 19–20 (Aug. 24, 1989). These are the funds which purchased the subordinated debt. *Id. See Bond v. Charlson*, 374 N.W.2d 423, 430 (Minn.1985) (a defrauded purchaser is estopped from rescinding if performed with knowledge of the facts which constituted the fraud).

■ Plaintiff also asserts a claim for money damages on the basis of common law fraud. In response, the FSLIC seeks to have this claim dismissed as moot since plaintiff can never obtain satisfaction of a money judgment. The Court recognizes that the general rule is "[c]laims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable." 14A C. Wright & A. Miller, *Federal Practice and Procedure*, § 3533.3 (1984).

As demonstrated above, plaintiff is a subordinated creditor. The FHLBB has already determined the subordinated debentures are worthless because Midwest Federal's assets were insufficient to satisfy general creditor liabilities. FHLBB Resolution 89–1388 at 3. Thus, the FSLIC argues, even if plaintiff were to succeed on his subordinate debt claims, his victory would be unavailing; his claim is not viable.

At least three courts have ruled that if the receiver would never have any assets with which to satisfy a judgment, a damages action is properly dismissed on pru-

---

7. Indeed, at oral argument plaintiff's counsel acknowledged that plaintiff knew he had purchased equity of the bank. Tr. of motion proceedings, at 18 (Aug. 24, 1989).

8. In *Weis Securities*, the Second Circuit rejected an argument that a lack of sophistication converts a subordinated debenture holder into a

general creditor. *Weis Securities*, 605 F.2d at 597.

9. But plaintiffs cannot use the Blue Sky law to save themselves from errors in business judgment; equity will not allow blind protection of purchasers. *Logan*, 293 N.W.2d at 363.

dential grounds. *Triland Holdings & Co. v. Sunbelt Serv. Corp.*, 884 F.2d 205, 208 (5th Cir.1989); *Federal Sav. and Loan Ins. Corp. v. Locke*, 718 F.Supp. 573, 587 (W.D. Tex.1989); *Stevenson v. Federal Sav. and Loan Ins. Corp.*, 716 F.Supp. 981, 982 (S.D. Tex.1989). This Court adopts this rule.

Accordingly, in order to conserve the limited resources of the judiciary, this Court declines to adjudicate plaintiff's futile damages claim.

Plaintiff, citing Rule 56(f), Fed.R.Civ.P., also asserts defendant's summary judgment motion to be premature, claiming a need to conduct further discovery. The request for additional discovery is wholly general and offers no specifics as to what discovery is sought.[10] A court may grant a continuance in accordance with Rule 56(f), Fed.R.Civ.P. *United States v. Light*, 766 F.2d 394, 398 (8th Cir.1985). That rule, however, does not require a court to order further discovery prior to summary judgment. *Id.* at 397.

The Court finds no reason for further discovery or for delay here. At oral argument, plaintiff's counsel indicated the proposed discovery pertained to plaintiff's subjective knowledge concerning whether his investment would be used to enable Midwest Federal to comply with regulatory capital requirements.[11] Tr. of motion proceedings, at 28–29 (Aug. 24, 1989). The *Weis Securities* discussion of subjective knowledge, above, makes clear that the proposed discovery would be superfluous.

Plaintiff's final contention is that the purchase and assumption transaction was flawed. This entire argument is premised upon a finding that plaintiff is able to rescind the subordination agreement and occupy the same posture as Midwest Feder-

al's general creditors. The Court has found that plaintiff is not entitled to rescind his agreement and remains a subordinated creditor of Midwest Federal. Thus, since plaintiff is not to be treated as a general creditor, he is not entitled to participate ratably in the distribution of Midwest Federal's assets pursuant to 12 U.S.C. § 1729.

Accordingly, IT IS ORDERED that:

1. The motion of defendant FSLIC as receiver for Midwest Federal to dismiss Counts III, IV, V, VI, and VII of the third amended complaint is granted.

2. In light of this Court's dismissal of all claims against the FSLIC (now RTC), the remaining parties are directed to submit letters to this Court within ten days of this order addressing whether to remand this action to the state court from whence it came.

10. Under the rule, one who claims a need for additional discovery must file an affidavit stating the reasons they cannot sufficiently establish the existence of a material factual dispute. *Beckers v. International Snowmobile Indus. Ass'n*, 581 F.2d 1308, 1311 (8th Cir.1978), (*citing* C. Wright & A. Miller, *Federal Practice and Procedure* § 2740), *cert. denied*, 440 U.S. 986, 99 S.Ct. 1801, 60 L.Ed.2d 248 (1979). *See also Burlington Coat Factory v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir.1985) (affidavit under Rule 56(f) must explain what facts are sought, how

they are to be obtained, how those facts are expected to create an issue of material fact, what efforts the affiant has made to obtain the facts, and why the efforts have been unsuccessful; failure to file such an affidavit is enough to reject a claim of inadequate discovery), *aff'd in part, rev'd in part*, 769 F.2d 919 (2d Cir.1985).

11. The Court finds it difficult to understand why one would need to conduct discovery to discern his own subjective state of mind.