109 P.3d 875 (2005)
GO2NET, INC., a Delaware corporation, Respondent,
v.
FREEYELLOW.COM, INC., a Florida corporation, and John Molino, Appellants.
No. 51674-4-I.
Court of Appeals of Washington, Division 1.
April 11, 2005.
*876 Mark S. Clark, Mary E. Crego, Seattle, WA, for Appellants.
Peter A. Danelo, Felix G. Luna, Seattle, WA, for Respondent.

PUBLISHED IN PART
BECKER, J.
¶ 1 Go2Net won a suit to rescind its acquisition of Freeyellow.com under the Securities Act of Washington after learning that seller John Molino had failed to disclose the ownership claims of a third party. Molino contends that the trial court should have allowed him to assert the equitable defenses of estoppel and waiver. Because a flexible rule allowing the assertion of these defenses would undermine the deterrent effect of the Act, we join those jurisdictions that do not allow them.
¶ 2 John Molino and Patricia Warren formed an Arizona internet company, the Free Yellow Pages Corporation, in 1997. Relations soured between them. Molino negotiated to buy out Warren's interest. Without reaching a final agreement with Warren, Molino moved the assets of the company to Florida. There, he incorporated a similar company, FreeYellow.com, Inc. He transferred the assets of the Free Yellow Pages Corporation to FreeYellow.com, without paying any compensation to Warren or the original company.
¶ 3 Warren had a strong claim to a 50 percent beneficial ownership interest in FreeYellow.com and its assets because it was essentially the same business as the Free Yellow Pages Corporation. Nevertheless, when Go2Net sought to acquire FreeYellow.com in 1999, Molino represented that he was the sole owner.
¶ 4 Go2Net determined FreeYellow.com's value by looking at the volume of unique users visiting its site, and then purchased the company from Molino through a merger agreement and stock exchange. Although Molino had earned only $14,000 in profit during the year that he operated FreeYellow.com, the agreement provided that Molino would receive $1 million in cash and $18.5 million in Go2Net stock as consideration for the merger. The agreement called for Go2Net to register the stock within 30 days so Molino could sell it easily. Of the $19.5 million total value he would receive, Molino was to deposit 10 percent into an escrow account as security for the indemnification obligations Molino undertook in the agreement.
¶ 5 Go2Net and Molino finalized the merger agreement near the end of October 1999. About two months later, Warren contacted Go2Net and informed them that she was a 50 percent shareholder of FreeYellow.com's predecessor corporation. She demanded that Go2Net cease using FreeYellow.com's property until resolution of the matter.
¶ 6 It is unclear whether, and how, Warren's demands against Molino and Go2Net were ultimately resolved. Go2Net's immediate reaction to Warren's claim was to negotiate with Molino over the course of nine months for the protection of a larger escrow account, while at the same time advising Molino that Go2Net was "prepared to pursue all rights and remedies available to it."[1] The negotiations seemed promising at first but ultimately failed in September 2000, when Molino informed Go2Net that he did not intend to enter into an escrow agreement. Molino demanded $16 million from Go2Net. Go2Net did not complete the registration of Molino's Go2Net stock, and Molino was not able to sell it.
¶ 7 While the negotiations for a larger escrow were going on, Go2Net decided to move forward with plans to integrate FreeYellow.com's website and its assets, both *877 tangible and intangible, into Go2Net's operation in Seattle. By September 2000, Go2Net was fully in possession of FreeYellow.com's user data and traffic. FreeYellow.com utilized "page builder" technology, which enabled novices to build their own web page by using a simple "point-and-click" process. Go2Net reverse-engineered this technology and put it to use.
¶ 8 Soon after the escrow negotiations failed and after completing the integration of FreeYellow.com's assets into its own operation, Go2Net filed suit against Freeyellow.com. The suit alleged fraud, breach of contract, and violation of the anti-fraud provision of the Securities Act of Washington, RCW ch. 21.20. Molino counterclaimed for unjust enrichment and breach of contract, and asserted the equitable defenses of waiver and estoppel against Go2Net's Securities Act claim. Before trial, Go2Net successfully moved to dismiss Molino's equitable defenses and his claim of unjust enrichment.
¶ 9 After Go2Net completed its case in chief, the court dismissed Go2Net's fraud claim. The jury found for Go2Net on the Securities Act claim. This finding by itself warranted rescission of the merger agreement. RCW 20.26.430. Accordingly, the jury did not reach the remaining claims by each party for breach of that agreement.
¶ 10 Upon rescinding the merger agreement, the trial court ordered Molino to return the money he had received as consideration (with interest), less the amount of income Go2Net had derived from its operation of FreeYellow.com. Both parties were required to return the stock they had exchanged under the terms of the merger agreement. The trial court dismissed all remaining claims between the parties with prejudice and awarded attorneys' fees to Go2Net.

EQUITABLE DEFENSES
¶ 11 The primary issue on appeal is whether Molino should have been allowed to assert equitable defenses as a bar to the Securities Act claim. Molino wanted to argue that Go2Net should have sought rescission of the merger agreement immediately upon becoming aware of Molino's nondisclosure of the Warren claim. Molino's theory is that Go2Net, by proceeding with the integration of FreeYellow.com into its own operation over the nine-month period of escrow negotiations, either waived its right to rescind the merger agreement or was estopped from doing so. Whether waiver and estoppel are available as defenses in an action brought under the Securities Act of Washington is a question of law. We review questions of law de novo. Rivett v. City of Tacoma, 123 Wash.2d 573, 578, 870 P.2d 299 (1994).
¶ 12 The Securities Act of Washington, RCW 21.20, is a remedial statute. Its primary purpose is to protect investors from speculative or fraudulent schemes of promoters. Cellular Engineering, Ltd. v. O'Neill, 118 Wash.2d 16, 23-24, 820 P.2d 941 (1991); see generally, Comment, Securities Fraud Under the Blue Sky of Washington, 53 Wash. L.Rev. 279, 282 (1978). The anti-fraud provision of the Act makes it unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading." RCW 21.20.010(2). The Act protects investors by relieving them of the burden of proving the seller possessed the intent to defraud, as would be necessary in a common law action for fraud. The sole remedy for a buyer who still holds the security is rescission of the transaction and an award of interest and attorneys' fees, less any income the buyer derived from possession of the securities. RCW 21.20.430(1); Kittilson v. Ford, 23 Wash.App. 402, 407-408, 595 P.2d 944 (1979), aff'd, 93 Wash.2d 223, 608 P.2d 264 (1980).
¶ 13 The statute is silent as to the availability of equitable defenses. Go2Net claims that this court ruled they are not available when deciding Aspelund v. Olerich, 56 Wash.App. 477, 784 P.2d 179 (1990). The appellant in Aspelund was a defendant who sold stock in a vending machine company. A finding of material misrepresentation led to rescission of the transaction. The seller argued on appeal that rescission was not appropriate *878 because the buyer waited two years before taking action. We affirmed on the basis that the Act expressly provides its own three-year statute of limitations. Aspelund, 56 Wash.App. at 484, 784 P.2d 179; RCW 21.20.430(4)(b).
¶ 14 Go2Net reasons that if waiver and estoppel had been available to the seller under the Securities Act of Washington, the Aspelund court would have remanded for trial on those defenses; and since it did not do so, that implicitly means the court decided they were not available. But although the Aspelund court arguably made laches an unavailable defense, the court did not address waiver and estoppel at all. Because there is no indication that the parties raised the issue of such defenses in their appeal, or that this court considered it, Aspelund is not pertinent to the issue in this appeal.
¶ 15 Molino argues that we should adopt federal precedent that allows a defendant to assert equitable defenses like estoppel in civil actions brought under the anti-fraud provisions, sections 10(b) and 29(b), of the Securities Exchange Act of 1934. See Royal Air Properties, Inc. v. Smith, 312 F.2d 210 (9th Cir., 1962).
¶ 16 The Securities Act of Washington is modeled after the Uniform Securities Act of 1956. The Uniform Act has been wholly or substantially enacted in the great majority of states. Cellular Engineering, 118 Wash.2d at 23-24, 820 P.2d 941. It "shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it and to coordinate the interpretation and administration of this chapter with the related federal regulation." RCW 21.20.900. This provision does not mean our courts must imitate the federal courts, however, only that in construing our state statute we must not interfere with the federal scheme. Kittilson v. Ford, 93 Wash.2d at 227, 608 P.2d 264.
¶ 17 Here, Molino does not contend that allowing the equitable defense of estoppel is necessary to avoid interference with the federal scheme. Under our Act, the objective of protecting investors is always foremost:
We have interpreted [RCW 21.20.900] to require harmony but not exact parallelism with other states' and federal law. We note that while the purpose of federal securities laws is to maintain the integrity of the secondary securities markets and to enforce disclosure, the WSSA is intended to protect investors. To this end, this court has construed the WSSA broadly.
Haberman v. Washington Public Power Supply System, 109 Wash.2d 107, 125-126, 744 P.2d 1032 (1987) (citations omitted).
¶ 18 Therefore, we need not follow Royal Air for the sake of conforming to federal precedent. The question is whether its reasoning sets forth a persuasive basis for allowing the assertion of the equitable defenses of waiver and estoppel under our statutory scheme. Precedent from other jurisdictions supplies no clear answer to this question. "The authorities are not in agreement as to whether the doctrine of equitable estoppel can be invoked by the seller of stock or other securities for the purpose of defeating the purchaser's claim that the sales contract is invalid because it violates a state's securities regulations." Annot., 84 A.L.R.2d 479, 482 (1962). The general view is that the doctrine of estoppel is not available to the seller, at least not unless there are special circumstances such as the intervention of rights of third persons or a duty on the part of the purchasers to insist on compliance with securities regulations. Id. However, a substantial number of courts do allow defendants to argue estoppel. The typical situation is where a purchaser, after finding out the transaction violated a securities statute, does not immediately move to rescind the purchase but instead becomes involved in managing the investment and asserts the illegality of the transaction only after the investment turns out to be unprofitable. In Royal Air, where the facts fit that pattern, the court held that waiver and estoppel were available defenses. Royal Air, 312 F.2d at 213-214, citing Straley v. Universal Uranium and Milling Corp., 289 F.2d 370 (9th Cir.1961).
¶ 19 In Royal Air, investor Smith purchased stock in a real estate venture corporation based upon a misleading prospectus. Smith was later elected to the board of directors *879 and served as president of the corporation. This position gave him access to facts that were omitted from the prospectus. Despite such knowledge, Smith appeared satisfied with his stock purchase until the corporation ran into difficulties some two years later. After the corporation's property was sold at a loss, Smith sued the sellers of stock under federal securities law and established a prima facie case of misrepresentation of material facts. The defendants sought to present affirmative defenses of estoppel, waiver, and laches. The trial court's refusal to allow these defenses was reversed on appeal. The appellate court did not think the absence of any reference to equitable defenses in the statute should be construed as legislative intent to make such defenses unavailable. "Since the buyer can elect to retain his investment, we see no reason why he cannot waive his statutory right to rescind or be estopped from asserting such right." Royal Air, 312 F.2d at 213. The court held that common law defenses should be available in a statutory action just as they would be in a common law action brought to declare a contract void. "The purpose of the Securities Exchange Act is to protect the innocent investor, not one who loses his innocence and then waits to see how his investment turns out before he decides to invoke the provisions of the Act." 312 F.2d at 213-214.
¶ 20 Some state courts too have allowed the equitable defense of estoppel. Molino cites Midwest Management Corp. v. Stephens, 291 N.W.2d 896 (Iowa, 1980) and Logan v. Panuska, 293 N.W.2d 359 (Minn., 1980).
¶ 21 In Midwest, the three defendants approached Midwest, an insurance company, with a plan for a new securities broker-dealer business, holding themselves out as experienced in that field. They offered to purchase specific amounts of Midwest stock over a five-year period to induce Midwest to provide startup capital for the new venture. After the broker-dealer business failed, Midwest filed suit to enforce the subscription agreements. The defendants obtained summary judgment in the trial court based on the argument that they were entitled to rescind the stock subscription agreements because Midwest had failed to register them, as required by Iowa's Blue Sky Laws. Midwest successfully argued on appeal that there was a material issue of fact as to whether the defendants were estopped by their conduct from asserting the invalidity of the stock subscription agreement. Midwest, 291 N.W.2d at 907-08, 912. The court observed that several federal courts "have recognized that purchasers may be estopped by their conduct from asserting an issuer's failure to comply" with registration provisions. Midwest, 291 N.W.2d at 912. Whether the conduct of a purchaser of stock estops him depends on the facts of the case, with the most important factors being the purchaser's "participation in the organization and management of the corporation, and facts showing reliance by the seller upon the conduct of the purchaser." Midwest, 291 N.W.2d at 908, quoting Annot., 84 A.L.R.2d 479, 482 (1962).
¶ 22 In Logan v. Panuska, investors purchased stock in a restaurant business they knew to be failing, and participated extensively in managing it. The investors even purchased more stock as it became available, notwithstanding the fact that the business was on the verge of being closed due to unpaid taxes. After the business failed, the investors sought to rescind their purchase of the unregistered securities. The appellate court held that the seller would be allowed to assert the defense of equitable estoppel. The court reasoned that Minnesota's Blue Sky law was not meant to protect the investor from errors of business judgment that were unrelated to the sale of unregistered securities:
Some of the plaintiffs bought into the restaurant only after being patrons of the establishment for a period of time and seeing its volume of business. The plaintiffs were not induced to buy the stock through any misrepresentation of the defendant as to the financial condition of the restaurant.... The plaintiffs actively participated in the management and control of the corporation during the course of their investment. Several were members of an executive committee, which was responsible for day-to-day operation of the restaurant, and received and read financial statements dealing with the business. All *880 voluntarily paid an additional assessment that was necessary to keep the restaurant open. Some of the plaintiffs even acquired additional stock from other shareholders after their initial purchases. Finally, none took any steps to rescind their stock purchases until after the business had failed. In a situation such as this, it would be inequitable to allow the plaintiffs to foist their losses upon the defendant.
Logan, 293 N.W.2d at 363-64.
¶ 23 Royal Air, Midwest and Logan exemplify a judicial reluctance to relinquish equity as a tool for adjusting the statutory scheme to the facts of each particular case. But other courts have reached the opposite conclusion: that allowing equitable defenses is inconsistent with a statute enacted to protect investors, because it means private litigation to enforce the Act will become expensive, unpredictable and lengthy. A federal court, for example, rejected an effort by sellers of unregistered securities to assert the defenses of unclean hands and in pari delicto in an action under the federal Securities Act of 1933, on the basis that allowing such defenses would seriously erode the deterrent effect of private suits. Lawler v. Gilliam, 569 F.2d 1283, 1293 (4th Cir., 1978).
A judgment based on the 1933 Act performs a dual function. It redresses a private wrong and enforces public policy. Since one of the essential purposes of the Act is to protect investors by requiring publication of information about a security through its registration, enforcement of the Act by private litigation ordinarily should not be encumbered by defenses for which the statute makes no provision.
Lawler v. Gilliam, 569 F.2d at 1291.
¶ 24 The Missouri Supreme Court similarly refused to allow an equitable estoppel defense in Covert v. Cross, 331 S.W.2d 576, 585 (Mo., 1960).[2] The facts in Covert were similar to Royal Air in that the defendants wanted to present evidence that plaintiffs allegedly waited to find out that certain oil wells were unproductive before electing to rescind the unregistered securities they had purchased relating to the oil leases. Nevertheless, the Missouri court concluded that the acts relied on did not constitute a defense. The theory of estoppel the defendants sought to present "would tend to nullify and defeat the very purpose of the statute, which is clearly penal in nature ... The Act was passed to protect investors against their own weaknesses and to prevent the happening of such losses as are shown by this record." Covert, 331 S.W.2d at 585.
¶ 25 The concerns expressed in Covert were cited and echoed by the dissent in Logan which expressed the view that the adoption of an equitable estoppel defense severely undermines the legislation regulating the sale of securities:
The very person sought to be protected, the investor, is denied recovery while the individual violating the law escapes liability. This result neither serves to compensate the innocent purchaser nor does it deter future violations of the Blue Sky Law. In fact, the majority decision could prompt clever promoters of questionable investments to ignore the Blue Sky regulations and, instead, encourage an investor to participate in the management of the company so that an estoppel defense could later be established. Clearly, use of estoppel as a defense in the instant actions is inconsistent with the express terms of the statute, as well as the policy underlying our Blue Sky Law. This law should be strictly enforced, and legal exceptions kept to a bare minimum.
Logan, dissenting opinion at 293 N.W.2d at 364. See also Gowdy v. Richter, 20 Ill.App.3d 514, 314 N.E.2d 549, 557 (1974)("The penal character of the statute negates the utilization of in pari delicto or estoppel defenses.").
¶ 26 In reviewing the two distinct lines of authority, it becomes apparent that there is not much middle ground. If estoppel is available as a defense, a defendant will typically be able to create uncertainty by alleging facts that tend to establish the elements of estoppel. The defendant will argue that a plaintiff who has become aware of a misrepresentation or other violation cannot, consistent with that awareness, try to manage the *881 business so as to protect the investment; and the defendant will claim to have relied to its detriment upon the plaintiff's seeming acquiescence. See, for a definition of estoppel, Saunders v. Lloyd's of London, 113 Wash.2d 330, 340, 779 P.2d 249 (1989). A commentator opines that the overall effect of allowing estoppel, even in limited circumstances, undermines the deterrent effect of the civil liability provisions:
Courts that allow the defense of estoppel lessen the blue sky laws' deterrent value and thus decrease compliance with the laws by hampering plaintiffs' chances of recovery. Repeated successful use of the defenses will result in decreased compliance with the laws. Courts that disallow estoppel, on the other hand, increase deterrence by allowing for more successful suits and creating a "general climate of fear of the statutory civil actions." To the extent that such courts increase deterrence, they further the primary goal of the laws.
Charles G. Stinner, Estoppel and In Pari Delicto Defenses to Civil Blue Sky Actions, 73 Cornell L.Rev. 448, 463 (1988)(footnotes omitted).
¶ 27 Although the Securities Act of Washington does not expressly bar estoppel and waiver as defenses, it contains strong language, including an anti-waiver provision, manifesting an intention to hold violators strictly accountable:
No person who has made or engaged in the performance of any contract in violation of any provision of this chapter or any rule or order hereunder, or who has acquired any purported right under any such contract with knowledge of the facts by reason of which its making or performance was in violation, may base any suit on the contract. Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this chapter or any rule or order hereunder is void.
RCW 21.20.430(5).
¶ 28 And as we have previously stated, the Act is a remedial statute that we will construe liberally "to suppress the evil and advance the remedy.'" Kittilson, 23 Wash.App. at 407, 595 P.2d 944, quoting 3 C. Sands, Statutes and Statutory Construction, § 60.01 (4th ed.1973). Allowing violators to freely assert equitable defenses could leave buyers without any remedy at all.
¶ 29 We are persuaded that the better rule is to bar the defenses of estoppel and waiver in an action alleging violation of a securities regulation.[3] The flexibility of such defenses is inconsistent with our Act's foremost objective of protecting investors. The statute provides the clean and surgical remedy of rescission as the sole recourse for an investor who proves a violation. It would upset the balance struck by the statute to allow factfinders to evaluate the investor's conduct on a case-by-case basis to determine whether it excuses the violation. We hold that equitable defenses are not available in an action under the Securities Act of Washington and conclude the trial court properly dismissed Molino's defenses of estoppel and waiver.
¶ 30 Affirmed.
¶ 31 The remainder of this opinion has no precedential value. Therefore it will be filed for public record in accordance with the rules governing unpublished opinions.
WE CONCUR: ELLINGTON, A.C.J.
COX, C.J. (concurring).
¶ 55 I concur in the result the majority reaches: the defenses of estoppel and waiver are not available to the defendant in this case. But the broader question of what, if any, equitable defenses should be allowed under the Washington State Securities Act is a complex policy question best left to the legislature to decide.
¶ 56 The general rule is that the doctrine of estoppel is not available to a seller who violates securities laws except when the rights of creditors or third parties intervene, or where the purchaser has a special duty to *882 ensure compliance with securities regulations.[1] Here, Molino does not contend that either of these two exceptions applies. Thus, the trial court properly decided under the general rule that the defenses of waiver and estoppel were not available in this case. Affirming the trial court on this ground is all that is necessary for this court to decide.
¶ 57 Whether equitable defenses of any type should be allowed under the WSSA is, of course, ultimately a legislative decision. The current wording of the civil liability section of the WSSA is silent on this point. This carefully worded and comprehensive statute, which is based on a uniform law adopted in many states, expressly provides that a plaintiff "may sue either at law or in equity" to recover.... [[2]] There is nothing in the plain wording of the statute that bars either legal or equitable defenses.[3] Moreover, the same section lays out the alternative measures of recovery for the successful plaintiff:
the consideration paid for the security, together with interest at eight percent per annum from the date of payment, costs, and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he or she no longer owns the security.[[4]]
Nothing in this language suggests any limitations as to defenses.
¶ 58 The majority extensively discusses its rationale for rejecting the federal approach that permits the assertion of equitable defenses under federal securities laws.[5] Like the WSSA, the federal law also has the purpose of protecting the innocent investor.[6] The majority correctly notes that we are not bound to parallel the federal approach. Yet, the majority's analysis rejecting that approach is unsupported by any evidence that effectuation of the protective purpose of securities laws is hampered by allowing the assertion of equitable defenses in a proper case. In the absence of such evidence, it is difficult to understand why permitting proper equitable defenses under the WSSA would not also promote the primary goal of protecting investors.
¶ 59 There is a final point. The majority cites a Cornell Law Review article, Estoppel and In Pari Delicto Defenses to Civil Blue Sky Law Actions,[7] to support its conclusion that equitable defenses should not be allowed. I find the article unpersuasive.
¶ 60 Without the benefit of empirical data, the author proposes a rule that would bar estoppel as a defense, but would allow the defense of in pari delicto. This selective barring of defenses is not, in my view, an argument for the barring of equitable defenses in all cases. Rather, it is an indication that whether such defenses should be barred in all cases is more complex than a simple "yes" or "no" answer. This is a further indication that the legislature, not this court, should decide this important and complex policy question.
¶ 61 To summarize, application of the general rule to the facts of this case is sufficient to support the bar of the assertion of equitable defenses in this case. Neither of the two exceptions applies here, and we need not decide anything more. The more general question of whether all, or only some, equitable defenses should be allowed under the WSSA is a complex policy question best left to the legislature to decide.
¶ 62 For these reasons, I concur in the result and would affirm the trial court on the more narrow basis of the general rule.
NOTES
[1] Clerk's Papers at 309.
[2] Like Washington, Missouri's Blue Sky legislation is modeled after the Uniform Securities Act.
[3] Molino has not argued that there were special circumstances such as intervention of the rights of third persons or a duty on the part of Go2Net to insist on compliance with securities regulations; nor has he asserted the defense of in pari delicto. We express no opinion on whether those features should be treated as exceptions to the rule.
[1] W.M. Moldoff, Annotation, Purchaser's Right To Set Up Invalidity Of Contract Because Of Violation Of State Securities Regulation As Affected By Doctrines Of Estoppel Or Pari Delicto, 84 A.L.R.2d 479, 485-86 (1962).
[2] RCW 21.20.430 (emphasis added).
[3] See Dunlap v. Wild, 22 Wash.App. 583, 591, 591 P.2d 834 (1979) (permitting the defense of collateral estoppel to bar a WSSA action).
[4] RCW 21.20.430 (emphasis added).
[5] Royal Air Properties, Inc. v. Smith, 312 F.2d 210, 213 (9th Cir.1962).
[6] Royal Air, 312 F.2d at 213; see also McClellan v. Sundholm, 89 Wash.2d 527, 533, 574 P.2d 371 (1978).
[7] 73 Cornell L.Rev. 448 (1988).