Steven A. CLAPP, Appellant,

v.

Richard E. PETERSON, individually and
as President of Ells Personal Systems,
Inc., Respondents.

No. 82–191.

Supreme Court of Minnesota.

Dec. 23, 1982.

Barnett, Ratelle, Hennessy, Vander Vort,
Stasel & Herzog, Minneapolis, for appellant.

Thomson, Lovett, Wahlfors & Moran and
William M. Thomson, Minneapolis, for re-
spondents.

SCOTT, Justice.

This is an appeal from an action brought
by appellant Steven A. Clapp against Rich-
ard E. Peterson, individually and as presi-
dent of Ells Personnel Systems, Inc., seek-
ing rescission of a franchise agreement un-
der the Minnesota Franchise Act, Minn.
Stat. ch. 80C (1980). The district court
denied appellant's requested relief and
granted respondents' counterclaim for con-
tinued payments under the franchise agree-
ment through November 20, 1979. We af-
firm.

On December 23, 1977, appellant and re-
spondent Ells Personnel Systems, Inc., en-
tered into a license and franchise agree-
ment under which appellant was granted
the exclusive right to operate an employ-
ment agency business in the city of Edina,
Minnesota, using the trade name "Ells,"
which was the property of respondents.
Appellant paid $3,000 as a franchise fee to
respondents and also agreed to pay respon-
dents six percent of the gross receipts of
the business.

The order of registration with respect to
the license and franchise agreement of re-
spondent Ells Personnel Systems, Inc., was
canceled by the State of Minnesota on Octo-
ber 6, 1976, and was not reinstated until
December 21, 1977. Appellant was first
presented with a copy of the public offering
statement on December 23, 1977, the day
the license and franchise agreement was
executed.

Appellant operated a business under the
"Ells" trade name at 6750 France Avenue
South in Edina from January 1, 1978, until
November 20, 1979. During the period it
operated under the agreement the gross
receipts of the business were $92,806.61.
The agreement required appellant to pay
respondent Ells Personnel Systems, Inc., six
percent of the gross receipts of the busi-
ness, which amounted to $5,568.39. Appel-
lant has paid the sum of $4,387.65, leaving a
balance of $1,180.74 due respondent Ells.

By his letter of October 1, 1979, appellant
informed respondents that rescission was
being sought and the return of all franchise
fees was requested. Respondents refused
and demanded continuation of the six per-
cent license fee.

The issue before this court is whether
appellant may be estopped from rescinding

a franchise agreement for a technical violation of the Minnesota Franchise Act, Minn. Stat. ch. 80C.

Chapter 80C was adopted in 1973 as remedial legislation designed to protect potential franchises within Minnesota from unfair contracts and other prevalent and previously unregulated abuses in a growing national franchise industry. *Martin Investors, Inc. v. Vander Bie,* 269 N.W.2d 868 (Minn.1978). Chapter 80C seeks to protect potential franchisees by requiring any person offering or selling a franchise within the state to register with the Commissioner of Securities a proposed public offering statement making full disclosure of all facts required by statute or rules of the commissioner. *See* §§ 80C.04 (1980) and 80C.06 (1980). It is conceded that respondent is in violation of Minn.Stat. § 80C.06, subd. 5 (1980).[1] Respondent accepted the $3,000 payment and appellant executed the agreement on the same day as the presentation of the public offering statement rather than giving appellant seven days to consider the documents as required by § 80C.06, subd. 5. Appellant seeks to rescind the franchise agreement pursuant to Minn.Stat. § 80C.17, subd. 1 (1980).[2] Respondent claims that because appellant operated the business under the license and franchise agreement for more than 22 months he is estopped from rescinding the agreement.

In *Logan v. Panuska,* 293 N.W.2d 359 (Minn.1980), this court held that equitable estoppel is a defense to an action for the rescission of a sale of securities which violates the Minnesota Blue Sky Law, Minn. Stat. ch. 80 (1971). The court concluded that a sale of securities in violation of registration requirements renders the sales agreement voidable rather than void. The court reasoned that only voidable contracts can be ratified or confirmed and that the legislature did not intend to invalidate all sales contrary to the securities laws because purchasers would then be precluded from enforcing the sale where it was a profitable venture free from fraud. The court went on to state:

> We do not believe the void-voidable rule should prevent a court from acting fairly by applying equitable principles, nor do we believe the Blue Sky Law was meant to be used to protect the investor from all of his errors of business judgment no matter how unrelated to, or distant from, the sale of unregistered securities.

293 N.W.2d at 363. Although *Logan* was decided under the Minnesota Blue Sky Law, Chapter 80, which has since been repealed and replaced by Chapter 80A (1980), the Minnesota Securities Act, Chapter 80A is largely a codification of the common law which Minnesota courts have applied in securities cases. The statutory regulation of franchises is strongly analogous to the statutory regulation of securities. Both are designed to protect the investing public from deceitful practices by requiring sellers

---

1. Section 80C.06, subd. 5, provides:

    Any person offering for sale or selling any franchise which is subject to the registration requirements imposed by section 80C.02 shall, at his own expense, present to the prospective franchisee, at least seven days prior to the execution by the prospective franchisee of any franchise or other agreement, or at least seven days prior to the payment of any consideration by the franchisee, whichever occurs first, a copy of the current public offering statement together with a copy of all proposed agreements relating to the sale of the franchise. The franchisee shall be permitted to retain the public offering statement prior and subsequent to the execution of any franchise or other agreement. The person offering or selling the franchise shall obtain a receipt, signed by the prospective franchisee, acknowledging that he has received a copy of the public offering statement prior to the execution by him of any franchise or other agreement and prior to the payment of any consideration by him. The receipt shall be kept in the possession of the person offering or selling the franchise, subject to inspection by the commissioner, for a period of three years from the date the receipt is taken.

2. Minn.Stat. § 80C.17, subd. 1 (1980), provides:

    Subdivision 1. A person who violates any provision of sections 80C.01 to 80C.13 and 80C.15 to 80C.22 or any rule or order thereunder shall be liable to the franchisee or subfranchisor who may sue for damages caused thereby, for rescission, or other relief as the court may deem appropriate.

to fully disclose relevant investment information to prospective buyers. The statutes which regulate securities and franchises both require registration by the seller with the Commissioner of Securities before offers or sales can be made in Minnesota. The close relationship between the two regulatory formats is further evidenced by the location of both acts within Chapter 80 of the Minnesota Statutes. In addition, the legislature adopted virtually the same language in granting both securities purchasers and franchisees the equitable remedy of rescission or an action at law for damages.[3] A comparison of the civil liability provisions of both acts makes it evident that the liability threshold and available remedies are identical. The reasoning and result of *Logan* indicate that equitable defenses should be available in an action for rescission of a franchise agreement based on a technical violation of the Minnesota Franchise Act.

To hold that the legislature intended that franchisees have the absolute right to rescind a franchise agreement which violates the Minnesota Franchise Act could lead to harsh and unfair results where no actual fraud is present. The technical violation of the Franchise Act committed by respondents resulted in no harm to appellant. Appellant has profited from the training he received during his franchise relationship with respondents. It seems safe to assume that appellant applies the lessons gained in the day-to-day conduct of his own personnel business, which he opened shortly after breaking with respondents. Appellant now seeks to reclaim monies paid, in part, for that training and advice after accepting and retaining the benefits of the franchise agreement for 22 months. This is not equitable. We, therefore, hold that equitable defenses are available to a defendant in an action for rescission based on a technical violation of the Minnesota Franchise Act.

Affirmed.

**3.** Minn.Stat. § 80A.23, subd. 1 (1980), states, in relevant part:

> Any person who sells a security in violation of sections 80A.08 or 80A.18, or of any condition imposed under section 80A.11, subdivision 4, or section 80A.12, subdivisions 5 and 6, is liable to the person purchasing the security from him, who may sue either in equity for rescission upon tender of the security or at law for damages if he no longer owns the security.