[Cite as *Burger Dynasty, Inc. v. Bar 145 Franchising, L.L.C.*, 2019-Ohio-4006.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Burger Dynasty, Inc

    Appellant

v.

Bar 145 Franchising, LLC, et al.

    Appellees

Court of Appeals No. L-19-1027

Trial Court No. CI0201703567

**<u>DECISION AND JUDGMENT</u>**

Decided: September 30, 2019

* * * * *

James L. Miller, Hunter G. Cavell, and Michael J. Stewart, for appellant.

John A. Borell, Jr., Henry J. Geha, III, and Anthony L. Hunter, for appellees.

* * * * *

**SINGER, J.**

**{¶ 1}** Appellant, Burger Dynasty, Inc., appeals from the judgments of the Lucas County Court of Common Pleas granting in part appellees' motion to dismiss and granting appellees' motion for summary judgment. For the following reasons, we reverse in part and affirm in part.

## Assignments of Error

Assignment of Error One: The Trial Court Erred When It Denied Plaintiff-Appellant's Motion for Summary Judgment

Assignment of Error Two: The Trial Court Erred When It Granted Corporate Defendants-Appellees' Motion for Summary Judgment

Assignment of Error Three: The Trial Court Erred When It Granted Individual Defendants-Appellees' Motion to Dismiss

## Background

{¶ 2} In August 2014, appellant purchased a restaurant franchise from appellee Bar 145 Franchising, Inc. ("Bar 145") by executing a franchise agreement. Bar 145 Franchising sells franchisees of its restaurant concept called Bar 145. Bar 145 restaurants are gastropubs provided live music and gourmet burgers to its patrons.

{¶ 3} Prior to the purchase, Bar 145 Franchising provided appellant a Financial Disclosure Document ("FDD") which disclosed certain financial information about Bar 145 Franchising's owner and manager, appellee JGCBlock, Inc. ("JGCBlock").

{¶ 4} Prior to the purchase, appellant was also provided a franchise agreement which served as the contract for the relationship between the parties. The franchise agreement required appellant to purchase materials exclusively from Bar 145 Franchising, to make an initial payment in the amount of $36,000, Bar 145 would provide some amounts of training and assistance, and that Bar 145 Franchising would assist in finding a location for the future restaurant.

2.

{¶ 5} Following the signing of the franchise agreement, appellant opened a Bar 145 restaurant in Avon, Ohio. The restaurant would eventually fail and close in 2017. Following the closure of the restaurant, appellant discovered Bar 145 Franchising violated the Ohio Business Opportunity Act ("BOPA") by failing to include a notice of cancellation in the franchise agreement.

{¶ 6} On August 2, 2017, appellant brought a complaint alleging Bar 145 Franchising failed to comply with BOPA and for declaratory judgment. Bar 145 Franchising filed an answer and counterclaim which alleged breach of contract and loss of bargain damages.

{¶ 7} Appellees Jeremy Fitzgerald and George Simon filed a motion to dismiss in response to the complaint arguing that they did not meet the definitions of "seller" or "broker" under BOPA. The trial court agreed and found that neither officer met the definition of a seller or broker under BOPA because they were acting as individual corporate officers when marketing the franchise to appellant.

{¶ 8} JGCBlock also made a similar motion claiming it was an "affiliated person" and also not subject to the requirements of BOPA. The trial court found that there was not sufficient information to determine if JGCBlock retained any value from the sale and found more information was needed.

{¶ 9} On June 14, 2018, appellant filed its motion for summary judgment where it argued that BOPA applied to the transaction, that because JGCBlock and Bar 145 Franchising failed to comply in all material respects with federal disclosure requirements, appellees were not exempt from BOPA, and that appellees violated BOPA. The trial

3.

court denied this motion on October 5, 2018 after finding the omission of the guarantee was not a material violation of federal disclosure requirements.

{¶ 10} JGCBlock and Bar 145 Franchising filed their motion for summary judgment seeking judgment on its breach of contract claims and its loss of bargain damages on the following day. The court granted this motion on October 5, 2018. This timely appeal followed.

## Standard of Review

{¶ 11} An appellate court reviews a trial court's summary judgment decision de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment will be granted when no genuine issues of material fact exist when after, construing all the evidence in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). *Accord Lopez v. Home Depot*, *USA, Inc.*, 6th Dist. Lucas No. L-02-1248, 2003-Ohio-2132, ¶ 7. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984).

## Legal Analysis

## BOPA Violation

{¶ 12} Appellant argues the trial court erred in granting summary judgment because JGCBlock and Bar 145 Franchising did not materially comply with the federal disclosure deadlines found in 16 C.F.R. 436, also known as the "FTC rule." Appellant

4.

argues that because JGCBlock's failure to attach its guarantee to the FDD, appellees did not materially comply with the FTC rule and therefore are beholden to regulations under BOPA. Appellant further argues that appellees violated BOPA's provisions regarding including a notice of cancellation and that they are entitled to statutory damages based on these omissions.

{¶ 13} Appellees admit that although they intended to include the guarantee, they failed to do so. Appellees argue that they materially complied with the FTC rule and though they failed to attach the guarantee, the guarantee was not material to the transaction. Appellees further argue that appellant is unable to prove its damages and that appellant waived its right to rescission when it opened additional franchises with Bar 145 Franchising.

## BOPA and its Requirements

{¶ 14} The legislature enacted BOPA to "protect purchasers of business opportunity plans by requiring that sellers provide the purchasers of business opportunity plans by requiring that sellers provide the purchasers with the information necessary to make an intelligent decision about the business plan being offered * * *" R.C. 1334.15(A). The purpose of the statute is to regulate the sale of business opportunity plans and to provide significant remedies "'to those who have been misled by dishonest or negligent franchisors.'" *Peltier v. Spaghetti Tree, Inc.*, 6 Ohio St.3d 194, 196, 452 N.E.2d 1219 (1983), quoting 41 Ohio St.L.J. 477 (1980).

5.

{¶ 15} A business opportunity plan is an agreement between parties in which the purchaser obtains the right to offer, sell, or distribute goods or services. R.C. 1334.15(D). A seller is a "person who sells or leases a business opportunity plan." R.C. 1334.01(A). A purchaser is a "person to whom a business opportunity plan is sold or leased." R.C. 1334.01(B).

{¶ 16} The plan must meet the several conditions, including the requirement that the goods and services are supplied by the seller or a third party seller requires, and the purchaser is required to make an initial payment between $500 and $100,000 to the seller or an affiliate. R.C. 1334.15(D)(1-2).

{¶ 17} Further, in order to be beholden to BOPA's requirements, the seller must make the following representations to the purchaser: (1) that the purchaser will be provided outlets or accounts or assistance in finding those accounts for the distribution of the goods and services; (2) that the purchaser will be provided locations or assistance in finding locations for use in the distribution of goods or services; (3) that the purchaser can make a profit in excess of the initial payment; (4) that a market exists for the goods and services; and (5) that there is a buy-back agreement. R.C. 1334.15(D)(3).

{¶ 18} Here, we find that the franchise agreement meets the definition of a business opportunity agreement under BOPA. The franchise agreement was an agreement between two parties in which appellant obtained the right to offer and sell services as a franchisee of Bar 145 Franchising. Appellant was required to purchase goods and services from appellees and made an initial payment of $36,000. Further, appellees made the required representations to appellant including the promise of

6.

assistance in obtaining a location and the possible profit from the franchise. Therefore, as the FDD qualifies as a business opportunity plan appellees were required to meet the requirements of BOPA or meet an exemption.

**Exemption from BOPA's Requirements**

{¶ 19} A business opportunity plan can be exempt from many of the requirements of BOPA if the transaction "complies in all material respects" with the federal disclosure requirements found in 16 C.F.R. 436.1 *et seq.* R.C. 1334.13. The FTC rule requires a franchisor to disclose twenty-three items in the FDD it provides to the prospective franchisee. 16 C.F.R. 436.5. The rule is detailed in terms of its requirements and includes sample tables for reference. 16 C.F.R. 436.5. Item twenty-one requires the disclosure of financial statements of either the seller or an affiliate of the seller in order to inform the franchisee of the fiscal status of the franchisor. 16 C.F.R. 436.5(u). The rule requires financial statements to be prepared according to the generally accepted accounting principles for the past two fiscal years. 16 C.F.R. 436.5(u)(1).

{¶ 20} An "affiliate" is an "entity controlled by, controlling, or under common control with, another entity." 16 C.F.R. 436.1(b). A franchisor is permitted to include the financial statements of its affiliate instead of its own statements if the affiliate "absolutely and unconditionally guarantees to assume the duties and obligations of the franchisor under the franchise agreement." 16 C.F.R. 436.5(u)(1)(iii). "If this alternative is used, attach a copy of the guarantee to the [FDD]." 16 C.F.R. 436.5(u)(1)(iii).

{¶ 21} Should a franchisor comply with this exemption and its requirements in all material respects, the franchise agreement does not need to meet many of the

7.

requirements under BOPA. The question then becomes whether appellee materially complied with the requirements of the FTC rule when it failed to attach the guarantee to the FDD.

{¶ 22} 16 C.F.R. 436.5(u)(1)(iii) clearly states that there are two alternatives for parties to follow when supplying a FDD to a potential franchisee. The first option is to have the financial statements of the franchisor audited according to GAAP principles for the previous two years. 16 C.F.R. 436.5(u)(1)(i-ii). The second option is to include the financial statements of an affiliate if the affiliate absolutely and unconditionally guarantees the franchisor's performance and obligations to the franchisee. 16 C.F.R. 436.5 (u)(1)(iii). The section clearly states that the ability to provide the financial statements of an affiliate is an "alternative" and that the guarantee must be attached to the disclosure document. *Id*.

{¶ 23} Here, appellees decided that they would choose the alternative provided for in the FTC rule and provided the financial statements of their affiliate, JGCBlock. *Cmplt*., Ex. A. The financial statements are clearly labelled as JGCBlock's and include statements about their financial status as well as their relationship with Bar 145 Franchising. They do not however make any guarantee of performance of Bar 145 Franchising's obligations to a future franchisee. Appellees therefore did not meet the technical requirements of the FTC rule as they neither attached the financial statements of Bar 145 Franchising or a guarantee from JGCBlock.

8.

## Materiality

{¶ 24} The next question then becomes whether their failure to attach a guarantee from JGCBlock can permit the court to find that they complied with the FTC rule in all material respects.

## Utilizing JGCBlock's Financial Statements

{¶ 25} Appellant first argues that appellees failed to comply with the FTC rule in all material respects because they misled appellant into believing that the financial statements related to Bar 145 Franchising rather than JGCBlock. Appellants point to the first paragraph of the FDD which states that words such as "we" or "our" relate to Bar 145 Franchising rather than JGCBlock.

{¶ 26} However, the court is not persuaded. The very next paragraph in the FDD states that JGCBlock is Bar 145 Franchising's affiliate who is the "owner and manager of Bar 145 Toledo and Bar 145 Franchising, LLC." *Cmplt.*, Ex. A, 1. The financial statements also clearly state that the financial statements are for "JGCBLOCK LLC dba Bar 145." *Cmplt.*, Ex. A, Financial Statements. The last three years of audited financial statements are then attached to the FDD. The only reference within those financial statements to Bar 145 Franchising is the relationship between JGCBlock and Bar 145 Franchising. Upon a cursory glance at the FDD, Bar 145 Franchising clearly determined it would use the alternative available to it by utilizing the financial statements of its affiliate. This is not a reason for appellees to be found not in compliance with the FTC rule.

9.

## Failure to Attach Guarantee

{¶ 27} Next, appellant argues that appellees failed to attach the guarantee that is required when a franchisor attaches the financial statements of an affiliate rather than their own financial statements. The FTC rule clearly states that such a guarantee is required to be attached. Appellees admit that the guarantee was not attached, but that they had intended to attach the guarantee.

{¶ 28} Appellant argues that the omission of the guarantee was a material omission. It argues that a reasonable person in a prospective franchisee's shoes would seek a guarantee to be included in the FDD. Appellant contends that such an objective standard should be utilized because it would lead to consistent results in the interpretation of the statute.

{¶ 29} Appellees argue that it was not material in this specific instance to appellant's decision to purchase the franchise because appellant bought an additional two franchises and attempted to buy all of the franchising rights of Bar 145 Franchising. Appellee points out that appellant is unable to articulate how the omission of the guarantee affected its decision making or led to the closing of the franchise. Appellee also argues that the omission was just a technical error and therefore was not material.

{¶ 30} Little case law exists as to how "material" is to be interpreted and applied by this court in this context. "Material" is not defined in R.C. 1334.01 *et seq.*, but the court notes that the previous version of R.C. 1334.13 required a party to "fully comply" with the federal statute to be exempted from BOPA. Am.Sub.S.B. No. 196, 2012 Ohio Laws File 130. This serves a clear indication from the legislature that a franchisor does

10.

not need to comply with every detail of the FTC rule, but rather only the material aspects of the FTC rule.

{¶ 31} Black's law dictionary defines "material" as "[h]aving some logical connection with the consequential facts or "[o]f some nature that knowledge of the item would affect a person's decision-making; significant; essential." *Black's Law Dictionary* (11th Ed.2019).

{¶ 32} In its *Final Guidelines* released when the original FTC rule was enacted, the Federal Trade Commission defined a "material fact" as "any fact, circumstance, or set of conditions which has a substantial likelihood of influencing a reasonable franchisee or a reasonable prospective franchisee in the making of a significant decision relating to a named franchise business or which has any significant impact on a franchisee or prospective franchisee." 44 F.R. 49972. This definition lends some understanding as to what information the FTC considered material to these types of transactions. It also demonstrates their tendency to view what was material in an objective light.

{¶ 33} When the FTC rule was revised in 2007, the FTC found that including a parent company's financial statements and an accompanying guarantee was appropriate in certain circumstances "[t]o the extent that a prospective franchisee is asked to rely on a parent to perform post-sale contractual obligations, or relies on a parent's guarantee, the financial stability of the parent becomes a material fact that should be disclosed." 72 F.R. 15444-01. They further found that the requirement that the guarantee be attached is a

11.

"sound policy" and that "[b]efore a prospective franchisee is asked to invest in a franchise, he or she should be able to assess the extent of any performance or financial guarantees." *Id*. at 15511 fn. 668.

**{¶ 34}** A "parent" is defined as "an entity that control another entity directly, or indirectly through one or more subsidiaries." 16 C.F.R. 436.1(m).   It is important to note that a parent is only required to disclose its financial statements when it has ongoing responsibilities to the franchisee following the sale of the franchise.  16 C.F.R. 436.5(u)(1)(v)(parent must include its financial statements and a similar guarantee when it commits to "perform post-sale obligations").  Nevertheless, they are still required to provide a guarantee of the franchisor's performance in specific instances and the FTC's guidelines clearly find that guarantee to be important when fully disclosing important information to future franchisees.  The court finds this illustrative of the importance of the guarantees when the guarantee relates to an entity that is guaranteeing the performance of the franchisor in the future and the effect of that information on the franchisee.

**{¶ 35}** The trial court and appellees point to cases from other jurisdictions in an attempt to give guidance on how this court should interpret what is "material" and what is a "technical violation" of the FTC rule.  Appellees point out these cases to make the argument that a technical violation is not enough to permit appellant to rescind the franchise agreement.  *BMW Co., Inc. v. Workbench, Inc.*, N.Y. S.D. No. 86 CIV. 4200, 1988 WL 45594 (Apr. 29, 1988)(finding the failure to enclose information about the exclusivity of products was not sufficient to find a violation of the FTC rule because

12.

other factors led to the venture's demise); *Dunkin' Donuts v. HWT Assoc.*, 181 A.D.2d 711, (N.Y. App. 1992)(finding the misrepresentation about competing stores nearby had a negligible effect on the business decision); *Burgers Bar Five Towns, LLC v. Burger Holdings Corp.*, 71 A.D.3d 939, (N.Y. App. 2010)(finding the failure to register the prospectus as required will not permit relief unless can prove damages); *Long John Silver's Inc. and A & W Restaurants, Inc. v. Nickleson*, 923 F.Supp.2d 1004 (W.D. Ky.2013)(summary judgment inappropriate when genuine issues of material facts surrounding causation and damages still exist as to franchisor's failure to present FDD seven days prior to signing franchise agreement); *Clapp v. Peterson*, 327 N.W.2d 585 (Ct. 1982)(providing FDD same day as signing franchise agreement was a technical violation with no harm to franchisees); *Two Men and a Truck/International Inc. v. Two men and a Truck/Kalamazoo, Inc.*, 949 F.Supp. 500 (W.D. Mich.1996) (providing FDD seven days before singing franchise agreement instead of the required ten days was a mere technical violation that was in spirit with the law).

{¶ 36} Appellant distinguishes these cases based on those specific state's laws. For example, Florida permits a private cause of action for violating the FTC rule as it is a deceptive practice. The other courts interpreting that a technical violation of the FTC rule found the violation must be accompanied by a an intent to deceive, the violation in some way led to the demise of the franchise, or the violation led to damages for the franchisee. None of the above cited cases dealt with a failure to attach a guarantee to the FDD. Most of these cases dealt with missed deadlines or the failure to include information that could have been ascertained by the franchisee. Therefore, unlike the

13.

trial court, this court finds these cases distinguishable. The cases from other jurisdictions are different from the case at hand because those jurisdictions did not have to determine whether a violation was material or if the violation meant the franchisor complied with the FTC rule in all material respects. Those jurisdictions also dealt with what can be described as technical violations such as failures to follow deadlines and whether those technical violations affected the franchisee's decision to sign the franchise agreement. This is not the inquiry for this court. Rather, this court is required to determine if by failing to attach the guarantee from JGCBlock, appellees complied in all material aspects of the FTC rule.

{¶ 37} For example, in *Braatz, LLC v. Red Mango, LLC*, N.D. Texas No.3:14-CV-4516-G, 2015 WL 1893194 (Apr. 27, 2015), the district court relied on Wisconsin law to determine that the omission of a document was not material to the transaction and therefore did not violate the Wisconsin law regarding franchises. Specifically, a franchisor is required to register a copy of the franchise agreement and FDD with the state. *Id* at *4, citing Wis. Stat. § 553.27(4). If the franchisor fails to register the information and that *omission was material in the decision to purchase the franchise*, the franchisee may rescind the agreement. *Id*., citing Wis. Stat. § 553.51(1)(Emphasis added). So although appellees attempt to argue that *Braatz* applies to the case at hand, the analysis is very different. The Wisconsin law specifically required the omission or violation to be material to the franchisee when making its decision to buy a franchise. *Id*. Ohio law does not make any such requirements. *See* R.C. 1334.13. The Revised Code section at issue merely states that the franchisor must comply with the FTC rule in all

14.

material respects.  R.C. 1334.13.  The district court in *Braatz* found that the materiality requirement of the Wisconsin statute requires a subjective view of the word material and a court must look at how a violation of the rule affected the specific franchisee at issue. *Braatz* at \*4 ("the statutory text instructs the court to assess the 'materiality' requirement by examining the [franchisee's] actions specifically, not the hypothetical actions of an objectively reasonable person").  No such indication is given the Ohio law, which in this court's opinion, lends itself more towards an objective view of the word material and that a court must determine what a reasonable person in the shoes of the franchisee would require when deciding to make the purchase of the franchise.

{¶ 38} Moreover, the court does not find that the failure to attach the guarantee of JGCBlock was a mere technical violation as appellees attempt to argue.  It is not as if the FDD was provided to appellant a day or two after the actual deadline had passed, this was a failure to attach the guarantee of the financial responsibilities of JGCBlock.  Despite the intent of JGCBlock and the failure of appellant to recognize the omission, the omission still serves as a violation of the FTC rule and a material violation at that.

{¶ 39} The court finds that for a party to comply with all material respects of the FTC rule, the party must follow the plain language of the FTC rule.  The rule clearly states a franchisor has one of two options available to them to comply with the rule: attach two years of their own audited financial statements or attach two years of audited financial statements of their affiliate who guarantees the financial obligations of the franchisor.  16 C.F.R. 436.5.

15.

{¶ 40} The court also finds that employing an objective view of what is material is necessary in order to have consistency in the interpretation of the statute. The purpose of the exemption under BOPA is to permit franchisors to supply the same information across state borders with little extra costs and requirements, otherwise the franchisors would always be subject to the stricter requirements in BOPA.

{¶ 41} Therefore, the court finds the trial court erred in denying appellant's motion for summary judgment. The failure to attach the guarantee of JGCBlock cannot mean the appellees complied with the FTC rule in all "material respects."

### Violation of BOPA's Required Notices

{¶ 42} Having found that appellees were not exempt from BOPA's requirements, the question then becomes whether they violated BOPA.

{¶ 43} Appellant argues in its motion for summary judgment that appellees violated BOPA by failing to provide appellant notice of its right to cancel the transaction within five days, failed to provide a notice of appellant's right to cancel on the signature page, and failed to provide a detachable form of cancellation to the franchise agreement in violation of R.C. 1334.05. Appellees do not appear to contest these allegations, but rather make other arguments surrounding their exemption and whether damages can be proven.

{¶ 44} R.C. 1334.05 provides a purchaser has the right to cancel a business opportunity plan within five days and that written notice of this right be given in writing "at the address stated in the agreement." The franchise agreement is required to provide "[n]otice of the purchaser's right to cancel the agreement in at least ten-point boldface

16.

type" near the space where the purchaser signs the agreement. *Id*. This notice must state "'You the purchaser, may cancel this transaction at any time prior to midnight of the fifth business day after the date you sign this agreement. See the attached notice of cancellation for an explanation of this right.'" R.C. 1334.05(7). A form captioned "notice of cancellation" must be attached and contain the specific language contained in R.C. 1334.05(7)(B). The form must be easily detachable and be in ten-point boldface type. *Id*.

{¶ 45} Upon review of the franchise agreement, Bar 145 Franchising did not meet the requirements under the Revised Code. There is no notice of appellant's right to cancel the agreement and the required detachable form is not attached to the agreement. *Cmplt*., Ex. A. Therefore, appellees clearly violated BOPA and is subject to penalties for that violation.

## Written Notice of Rescission

{¶ 46} Appellees then argue that appellant has failed to provide them written notice to rescind the franchise agreement within three years. Appellant argues that the lawsuit that was filed served as their written notice and that the lawsuit was filed within three years of the franchise agreement being signed.

{¶ 47} R.C. 1334.09(A) provides that as a result of a violation of BOPA, a purchaser may rescind the franchise agreement by giving written notice within three years of the date of the agreement. Following the written notice, the purchaser may

17.

recover all sums paid to the seller, minus the fair market value at the time of delivery and the value of any goods supplied by the seller that were not returned. *Id*. No manner for providing the written notice is provided in the statute.

{¶ 48} The franchise agreement was signed on November 26, 2014. The complaint in this matter was filed on August 2, 2017. The complaint plainly seeks the rescission of the agreement. Appellees responded to the complaint in November 2017. Thus, appellees had been provided written notice, in the form of a complaint, that appellant was seeking to rescind the franchise agreement between the parties.

{¶ 49} Appellees provide no legal support that a complaint would not serve as written notice of a party's intent to rescind the agreement. The only other Ohio case interpreting this statute permitted the filing of a lawsuit to serve as written notice under R.C. 1334.06(A). In *RH/EY, Inc. v. Treachers*, 115 Ohio App.3d 332, 685 N.E.3d 332 (7th Dist.1996), the appellate court found that the five year statute of limitations found in R.C. 1334.10(C) did not apply because the seller had failed to include the right of cancellation notice in the franchise agreement.

{¶ 50} The court finds that appellant provided written notice of its intent to rescind the franchise within the three year time period by filing the complaint in this matter. Therefore, no genuine issues of material fact exist that appellant provided written notice of its intent to rescind the agreement within three years under R.C. 1334.06(A).

### Waiver of Rescission

{¶ 51} Appellees further argue that appellant waived its right to rescind the franchise agreement by opening two additional franchises after the omission of the

18.

guarantee. In support, appellees cite *Petland, Inc. v. Hendrix*, S.D. Ohio No. 2:04-CV-224, 2005 WL 1651723 (July 13, 2005). The court found that a franchisee had waived its argument that the franchise agreement was signed despite an unfair or deceptive practice of the franchisor. The franchisee found an impropriety and despite its existence, the franchisee did not seek rescission of the franchise agreement and continued to open a second franchise. The court found that because the franchisee discovered the violation and decided to open a second franchise anyway, they waived the ability to make a claim for unfair practice under 16 C.F.R. 436.1 and R.C. 1334.13.

{¶ 52} This is dissimilar to the case at hand as appellant alleges that it did not discover the violation until after the close of the franchise. Appellant is not claiming an unfair or deceptive practice took place on the part of appellees, but rather that appellees failed to follow a statute and statutory damages flow from that violation. Appellant has presented information that it did not discover the BOPA violation until after the closure of the restaurant and appellees have failed to create a genuine issue of material fact that appellant was aware there was a violation before that date. The court concurs with appellant and does not find that appellant waived the claim of rescission. Therefore, appellant is entitled to rescission of the franchise agreement under BOPA.

## Damages

{¶ 53} Appellees next argue that appellant cannot prove they suffered damages as a result of the BOPA violation.

> In any case arising under section 1334.08 or 1334.09 of the
> Revised Code, if a seller or broker shows by a preponderance of the

evidence that a violation, or failure to meet the requirements of the exemption provided for in section 1334.13 of the Revised Code, resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error, no civil penalties shall be imposed against the seller or broker under division (D) of section1334.08 of the Revised Code, no party shall be awarded attorney's fees under division (B) of section 1334.09 of the Revised Code, and monetary recovery shall not exceed the amount of actual damages resulting from the violation. R.C. 1334.10(D).

{¶ 54} The court finds that there are genuine issues of material fact that exists in relation to whether the failure to meet the requirements under R.C. 1334.13 was due to a bona fide error. Appellees have the burden of establishing that the omission was due to such an error by a preponderance of the evidence. Therefore, appellant's motion for summary judgment must be denied on this basis.

**Appellee's Counterclaims**

{¶ 55} As the court ruled that summary judgment was proper on appellant's claims for rescission, the contract is treated as it never existed and therefore appellees cannot recover under the contract. Therefore, the summary judgment of appellees must be denied and the judgment of the Lucas County Court of Common Pleas reversed.

**Motion to Dismiss Individual Appellees**

{¶ 56} Appellees Jeremy Fitzgerald and George Simon moved to dismiss appellant's complaint against them on September 15, 2017 claiming that they were acting

20.

as officers of a corporation at the time the franchise was being negotiated and therefore cannot be held liable. Fitzgerald and Greene argued that they could not be held liable under BOPA because they did not meet the definition of a seller or a broker under BOPA. Fitzgerald and Simon alleged that there were no allegations in the complaint that they acted in any capacity other than as representatives of Bar 145 Franchising.

{¶ 57} Appellant argues that because Ohio is a notice pleading statute, they have alleged a set of facts which would entitle them to relief. Appellant also argues that because no discovery has taken place, appellant is unaware whether Fitzgerald and Simon are equity holders in Bar 145 Franchising. Appellant argues this matter is important because if Simon and Fitzgerald were equity holders in Bar 145 Franchising, they would receive something of value by selling the franchise and therefore meet the definition of a broker.

{¶ 58} An appellate court reviews a motion to dismiss under Civ.R. 12(B) de novo. *Greely v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). A motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. Of Commrs.*, 65 Ohio St.3d 545, 548 605 N.E.2d 378 (1992). This court must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party. *Perrysburg Twp. v. City of Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. Under Civ.R. 12(B)(6), it must appear beyond a

21.

reasonable doubt that the plaintiff can prove no set of facts in support of the claim which would entitle the plaintiff to relief. *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 573 N.E.2d 1063 (1991).

{¶ 59} A "seller" is defined under BOPA as "a person who sells or leases a business opportunity plan." R.C. 1334.01(A). A broker is defined as "a person, other than a seller, who sells or leases, offers for sale or lease, or arranges for the sale or lease of a business opportunity plan for a commission, fee, or anything of value." R.C. 1334.01(C). "Person" is defined as "an individual, corporation, business trust, estate, trust, limited or general partnership, association, or other business entity." R.C. 1334.01(E).

{¶ 60} The Seventh District found when presented with a similar situation that officers of a corporation do not meet the definition of broker or seller under BOPA. *Yo-Can, Inc. v. The Yogurt Exchange, Inc.*, 7th Dist. Mahoning, 149 Ohio App.3d 513, 2002-Ohio-5194, 778 N.E2d 80, ¶ 32. "'An officer of a corporation is not commonly considered a broker merely because the corporation does not hire a broker and rather has its officers to act on its behalf.'" *Id.*

{¶ 61} In *Yo-Can*, the Seventh District found corporate officer and directors of a franchisor were not liable under BOPA because there was no intent by the legislature to hold such officer responsible under BOPA. *Id.* The court found that only one type of agent could be held liable under BOPA, a broker. *Id.* Further, "a statute creating a new right of redress must express its intent to hold officers personally liable in the area of regulation. Ohio's BOPA does not express this intent facially * * *" *Id.*

22.

{¶ 62} The court agrees with the Seventh District and finds that the legislature did not manifest an intent to include the corporate officers or directors of a franchisor in the definitions of seller or broker.

{¶ 63} Appellant attempts to argue that additional discovery should take place to determine whether Fitzgerald and Simon are actually brokers because they received something of value in return for selling a franchise. However, the court is limited to review of the complaint and its allegations on a motion to dismiss. Civ.R.12(B); *Crane Serv. & Inspections, LLC v. Cincinnati Specialty Underwriters Ins. Co.*, 12th Dist. Butler No. CA2018-01-003, 2018-Ohio-3622, ¶ 33, citing *Lindow v. N. Royalton*, 104 Ohio App.3d 152, 661 N.E.2d 253 (8th Dist.1995) ("completion of discovery is therefore not relevant to the granting of a motion to dismiss"). Therefore, without seeking to have the motion converted to a motion for summary judgment, the court is not permitted to consider any information outside of the complaint.

{¶ 64} The court has reviewed the complaint and the exhibits and finds no facts or allegations by appellant that Fitzgerald and Simon were acting in any capacity other than in their capacities as officers of Bar 145 Franchising. Appellant alleges that Fitzgerald and Simon communicated with appellant directly, but fails to make any further allegations against either of the corporation's officers. *Cmplt*. At ¶ 8.

{¶ 65} The court cannot find a set of facts which entitled appellant to relief because appellant has failed to make any allegations which would permit a reasonable inference that Fitzgerald and Simon were a seller or a broker under BOPA. Appellant

23.

failed to include any allegation outside the fact that the men worked with appellant directly which would permit the court to find that they are liable under BOPA.

{¶ 66} This court must agree with appellees. Appellant failed in its complaint to allege a set of facts upon which this court could find that Fitzgerald and Simon met the definitions of seller or broker under BOPA. Therefore, the judgment of the Lucas County Court of Common Pleas is affirmed in this regard.

## Conclusion

{¶ 67} On consideration thereof, the judgment of the Lucas County Court of Common Pleas is reversed in part and affirmed in part. The judgment granting appellees' motion for summary judgment and denying appellant's motion for summary judgment are reversed. The judgment granting appellees' motion to dismiss is affirmed. The matter is remanded for proceedings consistent with this opinion. The parties are ordered to split the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part,
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.              _____
                                                      JUDGE
Arlene Singer, J.             

                                            _____
Christine E. Mayle, P.J.                                 JUDGE
CONCUR.

                                            _____
                                                    JUDGE

24.

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.